**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| NEONODE SMARTPHONE LLC, | Civil Action No. 6:20-cv-00507 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO. LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Neonode Smartphone LLC ("Neonode"), by and through its attorneys, hereby alleges the following:

## I. NATURE OF THE ACTION

1. This is a patent infringement action for damages and other appropriate remedies for Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc.'s ("SEA's") (collectively, "Samsung" or "Defendants") unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of products incorporating Plaintiff's patented inventions.

2. Neonode is the owner of all right, title, and interest in and to United States Patent Nos. 8,095,879 (the "'879 Patent"), issued January 10, 2012 and titled "User Interface for Mobile Handheld Computer Unit." A true and correct copy of the '879 Patent is attached hereto as Exhibit A.

3.      Neonode is also the owner of all right, title, and interest in and to United States Patent Nos. 8,812,993 (the "'993 Patent"), issued August 19, 2014 and titled "User Interface."  A true and correct copy of the '993 Patent is attached hereto as Exhibit B.

4.      Samsung manufactures, provides, sells, offers for sale, imports, and/or distributes products that directly infringe the '879 and '993 Patents.  Further, Samsung indirectly infringes the '879 and '993 Patents by inducing and contributing to infringement by others, including users of Samsung devices.

5.      Neonode seeks monetary damages, prejudgment interest, injunctive relief, and other relief for Samsung's past and continuing infringement of the '879 and '993 Patents.

## II.      PARTIES

6.      Plaintiff Neonode is a Wyoming limited liability company having a principal place of business at 30 N. Gould St., Suite R, Sheridan, WY 82801.

7.      Upon information and belief, Defendant SEC is a corporation organized under the laws of South Korea, with its principal place of business at 129 Samsung-Ro, Maetan-3dong, Yeongtong-gu, Suwon, 443-742, South Korea.

8.      Upon information and belief, SEA is a wholly owned subsidiary of SEC and is a corporation organized under the laws of the State of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

## III.      JURISDICTION AND VENUE

9.      This is an action for patent infringement, which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 282, 284, and 285.  The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.      This Court has personal jurisdiction over Samsung because Samsung has committed acts giving rise to this action within Texas and within this judicial district.

Defendants regularly do business or solicit business in this District and in Texas, engage in other persistent courses of conduct and derive substantial revenue from products and services provided in this District and in Texas, and have purposefully established substantial, systematic, and continuous contacts within this District and should reasonably expect to be sued in a court in this District.  For example, Samsung has offices within this district.  The website www.samsung.com solicits sales of infringing products to consumers in this District and in Texas.  Given these contacts, the Court's exercise of jurisdiction over Samsung will not offend traditional notions of fair play and substantial justice.

11.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and l400(b) because Samsung has regular and established places of business in this District, including at 12100 Samsung Boulevard, Austin, Texas, has committed acts within this judicial district giving rise to this action, and continues to conduct business in this judicial district, including multiple acts of making, selling, using, importing and/or offering for sale infringing products in this District.

## IV.     THE PATENTS-IN-SUIT

12.     Magnus Goertz, the named inventor of both the '879 and '993 Patents, co-founded Neonode AB in or about 2001.  Neonode AB and its affiliated and successor entities developed and commercialized the Neonode N1 and N2 mobile phones.  The N1 and N2 incorporated the company's zForce and Neno touchscreen and interface technologies, which enabled production of a phone small enough to fit in the palm of your hand and allowed the user to navigate menus and functions with simple finger-based taps and swipes.  Patents covering these technologies were later issued in the United States to Neonode Inc.  As of 2020, the zForce technology had been incorporated into at least 73 million products worldwide.

13.     The '879 and '993 Patents relate to the Neno technology for presenting and interacting with a user interface of a mobile handheld computer unit that includes a touch sensitive display.

14.     The specification common to both the '879 Patent and the '993 Patent identifies technical problems in the prior art and discloses solutions to these problems.  For instance, the specification explains that there was a recognized problem in the prior art as of 2002, the priority date of both patents, providing an interface on mobile handheld computers that was "adapted to handle a large amount of information and different kinds of traditional computer-related applications on a small handheld computer unit."  ('879 Patent, col. 1:49-52; '993 Patent, col. 1:59-62)  It was also "a problem to provide a small handheld computer unit with an easily accessible text input function."  ('879 Patent, col. 1:56-57; '993 Patent, col. 1:66-67)  It was "also a problem to provide a simple way to make the most commonly used functions for navigation and management available in the environment of a small handheld computer unit." ('879 Patent, col. 1:58-61; '993 Patent, col. 2:1-4)

15.     In order to overcome these problems, the '879 and '993 Patents taught, among other things, that a mobile device with a touch sensitive display could be configured to provide a user interface presenting multiple representations of predefined functions, each of which could be activated when the device detects a particular type of movement of an object on the display, such as, for example, a user's finger touching the display and gliding away from the touched location.  This teaching was novel, and, among other things, enabled more effective use of the limited space available on the touch sensitive display of a mobile computer unit such as a smartphone.

## V.     SAMSUNG'S KNOWLEDGE OF THE PATENTS-IN-SUIT

16.     On information and belief, Samsung has known of the '879 Patent since shortly after it issued, on January 10, 2012.

17.     On or about July 13, 2005, Neonode Sweden AB entered into a Research & Development and License Agreement with Samsung Electronics Co., Ltd. ("the Samsung Agreement").  Pursuant to this agreement, Neonode Sweden AB licensed certain patent applications "and the patents into which they may mature" in the zForce and Neno portfolios to Samsung; one of those applications, specifically identified in the Samsung Agreement, was U.S. Application No. 10/315,250, which later issued as the '879 Patent.  On information and belief, the Samsung Agreement terminated according to its terms by no later than early 2009.

18.     On or about February 8, 2012, Apple Inc. filed a complaint against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, entitled *Apple Inc. v. Samsung Electronics Co., Ltd*., et al., in the U.S. District Court for the Northern District of California, Case No. 12-CV-00630-LHK ("the *Apple v. Samsung* litigation").  In the *Apple v. Samsung* litigation, Apple alleged that the defendant Samsung entities had infringed and were infringing a number of Apple patents.  Among the Apple patents asserted in this action were U.S. Patent No. 8,046,721, entitled "Unlocking a device by performing gestures on an unlock image."  On information and belief, this patent became widely known as the "swipe to unlock" or "slide to unlock" patent.

19.     On information and belief, Samsung and/or its litigation counsel regularly monitored industry press relating to the subject matter of the litigation against Apple and undertook substantial research and investigative efforts to obtain information pertinent to the subject matter of the litigation against Apple, on an ongoing basis from at least February 2012 forward.

20.     On or about February 22, 2012, an article entitled "Neonode Beat Apple By Three Years With The Swipe-To-Unlock Patent" was published in the online journal The Tech Journal, https://thetechjournal.com/tech-news/industry-news/neonode-beat-apple-by-three-years-with-the-swipe-to-unlock-patent.xhtml.  The article stated, among other things, that "[a] small but feisty Swedish company, Neonode figured out how to integrate a slide to unlock feature in its phones, long before Apple even considering making an iPhone."  The article further stated:

> Apparently, in July 2004, Neonode introduced to the market a small phone called N1 that had the unlock feature. Neonode already had patented a slide to unlock feature, without the associated graphics and obtained the patent in December 2002 (the US patent number: 8095879).

*Id.*  The article included images of Figures 11 and 12 from the '879 Patent.  On information and belief, Samsung became aware of this article shortly after it was published.

21.     On or about February 27, 2012, an article entitled "A Swedish Company Claims It Owns A Swipe Patent Used By Apple" was published in the online journal Tech Crunch, https://techcrunch.com/2012/02/27/a-swedish-company-claims-it-owns-a-swipe-patent-that-is-used-by-apple/.  The article stated, among other things:

> Another front has opened in the multi-faceted story of patent battles: Neonode, an  optical touchscreen tech company based in Sweden, says that it has been granted a patent in the U.S. that covers the touch-and-glide gesture that it claims is used on devices like the iPhone and iPad.
>
> The patent is notable not only because Neonode says the patent covers functions like the horizontal touch gesture that Apple uses between screens on its iOS devices, as well as in the slide-to-unlock feature. But also because slide-to-unlock is the same feature that

Apple has been citing in its own patent lawsuits against Android device makers Motorola and Samsung.

*Id*.  The article identified the patent by number – "number 8,095,879 from the U.S. Patent and Trademark Office."  *Id*.  On information and belief, Samsung became aware of this article shortly after it was published.

22.     On or about February 28, 2012, an article entitled "Swedish company claims rights to 'slide to unlock' with new UI patent" was published in the online journal "appleinsider,"

https://appleinsider.com/articles/12/02/28/swedish_company_claims_rights_to_slide_to_unlock_with_new_ui_patent.  The article stated, among other things, that "Neonode says it was issued U.S. Patent No. 8,095,879 which covers gesture-based interaction with a touch sensitive surface, a description that is similar to Apple's "slide to unlock" patent," and that:

> If Apple is indeed sued over the '879 patent, it wouldn't be the first time the company has seen Neonode in a court hearing. In August 2011, Samsung trotted out a relatively obscure device made by the Swedish company in defense of an Apple suit regarding "slide to unlock" functionality.

*Id*.  The article included images of Figures 10-12 from the '879 Patent.  On information and belief, Samsung became aware of this article shortly after it was published.

23.     On March 19, 2012, Joseph Shain, Neonode Inc.'s Vice President of Intellectual Property, and well as Bjorn Thomas Eriksson, CEO of Neonode Technologies AB and Neonode Inc., were deposed by counsel for Apple and Motorola Mobility, Inc. in the action entitled *Motorola Mobility, Inc. v. Apple, Inc*., in the U.S District Court for the Southern District of Florida, Case No. 1:10cv023580-Civ-UU.  In the course of this deposition, the '879 Patent was

marked as an exhibit, and counsel for both Apple and Motorola asked Mr. Shain numerous questions relating to the patent. The law firm of Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") served as counsel for Motorola in this action and appeared on behalf of Motorola at this deposition; Quinn Emanuel also served as counsel for Samsung in the concurrently-pending *Apple Inc. v. Samsung* litigation.

24.     On information and belief, Samsung has known of the '993 Patent since shortly after it issued, on August 19, 2014.

25.     On or about July 8, 2013, Samsung filed "Samsung's Reduction of Invalidity References," Dkt. No. 671, in the *Apple v. Samsung* litigation. Samsung's Reduction of Invalidity References identified "Neonode N1 Quickstart Guide V0.5" as a reference against Apple's "swipe to unlock" patent. On information and belief, to the extent that Samsung was not already aware of the '879 Patent, the process of undertaking research and investigation regarding prior art references pertinent to Apple's "swipe to unlock" patent, in combination with articles previously published concerning the '879 Patent, as well as the interrogation by Samsung's counsel at the March 19, 2012 deposition, caused Samsung to become aware of the existence of the '879 Patent prior to submitting this filing.

26.     After a 13-day trial in the *Apple v. Samsung* litigation, the jury found the asserted claims of Apple's "swipe to unlock" patent infringed and not invalid. Samsung appealed the finding that the patent was not invalid. In an opinion issued on or about February 26, 2016, the Federal Circuit held that Apple's "swipe to unlock" patent would have been obvious over a combination that included the Neonode N1 Quickstart Guide. In a second opinion issued on or about October 7, 2016, the Federal Circuit, sitting en banc, held that there was substantial

evidence to support the jury's finding that Apple's "swipe to unlock" patent was not obvious over the cited combination, and affirmed and reinstated the district court judgment.

27.     On information and belief, to the extent that Samsung was not already aware of the '879 and '993 Patents, Samsung's reliance on the Neonode N1 Quickstart Guide as a principal prior art reference over several years of litigation that included a jury trial, an appeal to the Federal Circuit and two issued Federal Circuit opinions on the merits, combined with Samsung's knowledge of the '879 Patent – from which the '993 Patent descended as a continuation – from at least early 2012, caused Samsung to become aware of the '993 Patent as a result of, inter alia, the work of its counsel in connection with the *Apple v. Samsung* litigation.

28.     Samsung was again made aware of the '879 and '993 Patents on or about September 24, 2015, when Mr. Shain informed Claude Stern, an attorney with Quinn Emanuel, that John Quinn was authorized to explore Samsung's interest in Neonode Inc.'s patent portfolio. On or about October 22, 2015, Stern informed Mr. Shain that Samsung had told Quinn that it was uninterested.

## VI.     THE INFRINGING SAMSUNG DEVICES

29.     The Samsung Galaxy S line of smartphones was released for sale in the United States in or about June 2010.  Although the Galaxy S line ran the Android operating system, from the beginning the devices used a proprietary user interface designed and developed by Samsung, initially called TouchWiz, later rebranded as Samsung Experience and still later as One UI.  The code for executing Samsung's proprietary interface was also loaded onto Samsung's Galaxy Note, Galaxy Tab, and Galaxy A series devices, among others.

30.     **Swipe Typing**.  On information and belief, beginning in or about October 2012, Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices running version 4.2 and later versions of the Android operating system provided users a functionality that Samsung

branded as "Continuous Input."  Continuous Input was a "swipe typing" functionality that provided users the ability to enter text on a keyboard by gliding an object (such as the user's finger) across the keys on a keyboard rather than tapping each key individually:



31.    On information and belief, Samsung believed that its Continuous Input functionality favorably differentiated Samsung's mobile devices from competing devices sold by Apple Inc., which for several years following the introduction of Continuous Input lacked a native keyboard with swipe-typing functionality:



32.     **Incoming Call Interface**.  On information and belief, since at least around 2013, Samsung Galaxy S and Galaxy A devices, Galaxy Note devices, and at least some models of Galaxy Tab devices have presented the user with an "Incoming call" interface that requires the user to, e.g., accept an incoming voice call by touching a green "phone" icon and swiping away from the icon, or decline an incoming voice call and send the caller to voicemail by touching a red "phone" icon and swiping away from that icon:



33.   **Lock Screen**.  On information and belief, since at least around 2014, Samsung

Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices have included code for presenting

the user with a Lock Screen that includes the legend "Swipe to unlock" or "Swipe to open" in the

lower center portion of the display.  For example, the Lock Screen interface on a Galaxy S10

with the "Screen lock type" set to PIN and biometric security not enabled presents this display:



Following execution of a swiping gesture across the display, the Lock Screen as displayed above transitions to, e.g., a passcode or PIN entry screen.

34.     On information and belief, since at least around 2014, the Lock Screen presented by Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices has included one or more Lock Screen shortcuts, typically depicted as one or more icons in the lower portion of the display.  For example, the Lock Screen shortcuts in the screen shot of the Galaxy S10 shown above are for the phone application (in the lower left corner of the display) and the camera

application (in the lower right corner of the display).  Lock Screen shortcuts are activated by a swiping gesture that begins at the location of the icon and glides away from the icon along the display.

35.     On information and belief, in or about April 2017, Samsung released the Galaxy S8 and Galaxy S8+ devices in the United States.  One of the new features touted for the devices was the incorporation of facial recognition security.  This feature was incorporated into subsequent models of Samsung Galaxy S devices, as well as into Galaxy Note, Galaxy A, and Galaxy Tab devices.  In order to prevent accidental unlocking of the devices that included the new feature, they were configured to stay on the Lock Screen following use of the facial recognition feature to unlock the device, presenting an "opened padlock" graphic across the upper center of the display, until the user executes a swiping gesture across the display.  For example, the Lock Screen interface on a Galaxy S10 with the "Screen lock type" set to PIN and facial recognition security enabled presents this display:

:



36.     Following execution of a swiping gesture across the display, the display transitions to the Home Screen.  With facial recognition security configured for use on the devices, executing a swipe downward from the location where the "opened padlock" graphic is presented will not cause the display to transition to the Home Screen until after the "opened padlock" graphic has been instantiated on the display.

**COUNT I:     INFRINGEMENT OF THE '879 PATENT**

37.     Neonode incorporates paragraphs 1 through 36 herein by reference.

38.    Samsung has been and is presently directly infringing at least claim 1 of the '879 Patent by making, using, selling, or offering for sale within the United States, and/or importing into the United States, Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices (collectively, "the Samsung Galaxy Devices.").

39.    As one non-limiting example of the claims of the '879 Patent that are infringed by the Samsung Galaxy Devices, claim 1 of the '879 Patent recites:

> **1.** A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:
> a touch sensitive area in which a representation of a function is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location, wherein the representation of the function is not relocated or duplicated during the gliding.

40.    The Samsung Galaxy Devices are mobile handheld computer units, and include a memory storing code which, when read by a processor, allows the devices to present a user interface as described below.

41.    The Samsung Galaxy Devices include a display that is touch sensitive, in which one or more representations of functions are provided.

42.    **Direct Infringement – Lock Screen:** The Samsung Galaxy Devices present a Lock Screen, from which a user may transition to, e.g., a passcode entry screen:



43.     In the display as set forth above, the "Swipe to unlock" legend is a representation of a function, the representation consists of only one option for activating the function, and the function is activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the "Swipe to unlock" representation and (ii) gliding along the display away from the touched location.  The "Swipe to unlock" representation is not relocated or duplicated during the gliding.

44.     By way of additional example, the Samsung Galaxy Devices present a Lock

Screen from which a user may transition to the Home Screen:



45.     In the display as set forth above, the "Swipe to open" legend is a representation of

a function, the representation consists of only one option for activating the function, and the

function is activated by a multi-step operation comprising (i) an object (such as a user's finger)

touching the display at the location of the "Swipe to open" representation and (ii) gliding along

the display away from the touched location.  The "Swipe to open" representation is not relocated

or duplicated during the gliding.

46.     By way of additional example, the Lock Screen shortcut icons depicted on the Lock Screen display of the Samsung Galaxy Devices are representations of functions, each of which consists of only one option for activating the function, and the functions are activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the icon and (ii) gliding along the display away from the touched location.  The icons are not relocated or duplicated during the gliding.

47.     **Direct Infringement – Swipe Typing:**  By way of additional example, the Samsung Galaxy Devices present a "keyboard" display enabling text entry into a text field:





48.     In the display as set forth above, each of the "key" icons of the virtual keyboard is a representation of a function, each of the key icons consist of only one option for activating the function (i.e., one letter), and the function may be activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the key and (ii) gliding along the display away from the touched location.  Keys are not relocated or duplicated during the gliding.

49.     **Direct Infringement – Incoming Call:**  By way of additional example, the Samsung Galaxy Devices present the following display when the device receives an incoming call:



50.    Each of the two "telephone" icons (one green, one red) in the lower portion of the display is a representation of a function, each of them consist of only one option for activating the function, and the function is activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the icon and (ii) gliding along the display away from the touched location.  The telephone icons are not relocated or duplicated during the gliding.

51.    Samsung has never been, and is not now, licensed under the '879 Patent, and has never been authorized by any owner of the '879 Patent to engage in the acts alleged herein.

52.     Samsung's infringement of the '879 Patent has been and continues to be willful. On information and belief, based on at least the facts alleged at paragraphs 16-28 above, Samsung has known of the '879 Patent since at least February 22, 2012.  Samsung is a large corporation with a large and experienced legal department, and highly sophisticated in-house and outside intellectual property counsel.  Samsung knew or should have known that its conduct in making, using, selling, offering for sale, and/or importing the Samsung Galaxy Devices has infringed and does infringe the '879 Patent, yet proceeded to engage in such conduct despite a high likelihood that a court would find the products to be infringing.

53.     The '879 Patent is not invalid and is enforceable.

54.     Neonode has sustained significant damages as a direct and proximate result of Samsung's infringement of the '879 Patent.

**COUNT II:    INFRINGEMENT OF THE '993 PATENT**

55.     Neonode incorporates paragraphs 1 through 54 herein by reference.

56.     **Direct Infringement:**  Samsung has been and is presently directly infringing at least claim 1 of the '993 Patent by making, using, selling, or offering for sale within the United States, and/or importing into the United States, Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices that include or included code for enabling the device to stay on the Lock Screen following use of facial recognition security (collectively, "the Infringing '993 Devices").

57.     As one non-limiting example of the claims of the '993 Patent that are infringed by the Infringing '993 Devices, claim 1 of the '993 Patent recites:

1. A non-transitory computer readable medium storing instructions, which, when executed by a processor of an electronic device having a touch-sensitive display screen, cause the processor to enable a user interface of the device, the user interface comprising at least two states, namely, (a) a tap-present state, wherein a plurality of tap-activatable icons for a respective plurality of pre-designated system functions are present, each system function being activated in response to a tap on its respective icon, and (b) a tap-absent state, wherein tap-activatable icons are absent but an otherwise-activatable graphic is present in a strip along at least one edge of the display screen for transitioning the user interface from the tap-absent state to the tap-present state in response to a multi-step user gesture comprising (i) an object touching the display screen within the strip, and (ii) the object gliding on the display screen away from and out of the strip.

58.     The Infringing '993 Devices are electronic devices having a touch sensitive display screen and include a memory storing code which, when executed by a processor, causes the processor to present a user interface as outlined below.

59.     The user interface of the Infringing '993 Devices includes at least one tap-present state, in which a plurality of tap-activatable icons for a plurality of pre-designated system functions are present, each system function of which is activated in response to a tap on its respective icon, including at least the following.

60.     The Home Screen interface of the Infringing '993 Devices includes tap-activatable icons for a plurality of pre-designated system functions, such as a telephone function, an email function, a browser function and a camera function.  For example, the Home Screen interface on a Galaxy S10 presents multiple such tap-activatable icons:



61.    The user interface of the Infringing '993 Devices includes a Lock Screen in which tap-activatable icons are absent, but in which at least one otherwise-activatable graphic is present, consisting of an "opened padlock" graphic in the upper center of the display.  For example, the Lock Screen interface on a Galaxy S10 presents this otherwise-activatable graphic:



Neither the telephone icon in the lower left, nor the camera icon in the lower right, nor any of the icons in the upper right corner of the display, of the Lock Screen are tap-activatable.

62.     When setting up facial recognition security on an Infringing '993 Device, the user is presented with an option to "Stay on Lock Screen," which configures the device to stay on the Lock Screen after the device has been unlocked with facial recognition until the user swipes across the display.  This option is enabled by default.  With facial recognition security configured for use on an Infringing '993 Device, and with the "Stay on Lock screen" option enabled, the interface will transition from the Lock Screen to the Home Screen after, e.g., the

user touches the location where the "opened padlock" graphic is presented and glides downward on the display.

63.     The instructions that cause the processor to enable configuration of the Infringing '993 Devices to use facial recognition security, and to stay on the Lock Screen following unlocking of the device using facial recognition security until the user has executed a swipe across the display, is present on the devices when they are made, used, sold, or offered for sale within the United States, and/or imported into the United States, by or for Samsung.

64.     **Indirect Infringement:**  Samsung has been and is presently indirectly infringing at least claim 1 of the '993 Patent, including by inducing users of Samsung devices to use devices that infringe the '993 Patent.

65.     Samsung has induced and continues to induce users of Samsung devices to use products that infringe the '993 Patent by, among other things, prompting and encouraging users of Samsung Galaxy S, Galaxy A, Galaxy Note, and Galaxy Tab devices to enable facial recognition security, and setting "Stay on Lock screen" as enabled by default.  For example, Samsung's website, at https://www.samsung.com/us/support/answer/ANS00062630/ and https://www.samsung.com/us/support/answer/ANS00083151/, provides detailed instructions to users of Infringing '993 Devices concerning how to enable facial recognition security and unlock their devices using facial recognition security.

66.     Users of the Infringing '993 Devices have committed and continue to commit acts of direct infringement by way of their past and ongoing configuring of the devices for facial recognition security and their use of the devices to perform the functionality alleged above.

67.     On information and belief, based on at least the facts alleged at paragraphs 16-28 above, Samsung has known of the '993 Patent since shortly after it issued on August 19, 2014.

68.     On information and belief, Samsung has intended, and does intend, that users of Infringing '993 Devices use the devices to perform the functionality alleged above.  On information and belief, Samsung has known and knows that, or has acted and acts with willful blindness to the likelihood that, the acts of users of Samsung devices in using the devices to perform the functionality alleged above constitutes infringement of the '993 Patent.

69.     Samsung has never been, and is not now, licensed under the '993 Patent, and has never been authorized by any owner of the '993 Patent to engage in the acts alleged herein.

70.     Samsung's infringement of the '993 Patent has been and continues to be willful. On information and belief, based on at least the facts alleged at paragraphs 16-28 above, Samsung has known of the '993 Patent since shortly after it issued.  Samsung is a large corporation with a large and experienced legal department, and highly sophisticated in-house and outside intellectual property counsel.  Samsung knew or should have known that the Infringing '993 Devices infringe the '993 Patent, yet proceeded to engage in such conduct despite a high likelihood that a court would find the products to be infringing.

71.     The '993 Patent is not invalid and is enforceable.

72.     Neonode has sustained significant damages as a direct and proximate result of Samsung's infringement of the '993 Patent.

## DEMAND FOR JURY TRIAL

73.     Neonode demands a trial by jury of all issues triable of right before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Neonode respectfully requests that the Court enter judgment as follows:

A.     That Samsung has infringed and continues to infringe the '879 Patent and the '993 Patent;

B.      Awarding Neonode damages adequate to compensate it for Samsung's infringement of the '879 Patent and the '993 Patent, in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the claimed inventions by them;

C.      Awarding a preliminary and permanent injunction restraining and enjoining Samsung, and its officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from any further manufacture, use, sales, offers to sell, or importations of any and all of the products and services identified above;

D.      Trebling all damages awarded to Neonode under the '879 Patent and the '993 Patent;

E.      Finding this case exceptional and awarding Neonode its reasonable attorneys' fees and non-taxable costs incurred in prosecuting its claims;

F.      Awarding Neonode pre-judgment and post-judgment interest at the maximum rate permitted by law;

G.      Awarding Neonode its taxable costs;

H.      Such further and additional relief as the Court determines to be just and proper.

DATED:  June 8, 2020                Respectfully submitted,

By: */s/ Craig D. Cherry*_____
Craig D. Cherry
State Bar No. 24012419
ccherry@haleyolson.com
Justin W. Allen
State Bar No. 24081977
jallen@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76712
913 Franklin Ave., Suite 201
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

Philip J. Graves (CA State Bar No. 153441) (pro hac vice pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7147
Facsimile: (213) 330-7152
Email: philipg@hbsslaw.com

Greer N. Shaw (CA State Bar No. 197960) (pro hac vice pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: greers@hbsslaw.com

*Counsel for Plaintiff Neonode Smartphone LLC*

# Exhibit A

US008095879B2

(12) **United States Patent**
Goertz

(10) Patent No.: **US 8,095,879 B2**
(45) Date of Patent: **Jan. 10, 2012**

(54) **USER INTERFACE FOR MOBILE HANDHELD COMPUTER UNIT**

(75) Inventor: **Magnus Goertz**, Stockholm (SE)

(73) Assignee: **Neonode Inc.**, Santa Clara, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1228 days.

(21) Appl. No.: **10/315,250**

(22) Filed: **Dec. 10, 2002**

(65) **Prior Publication Data**

US 2004/0109013 A1 Jun. 10, 2004

(51) **Int. Cl.**
*G06F 3/00* (2006.01)

(52) **U.S. Cl.** ......................... **715/716**; 715/864; 715/702

(58) **Field of Classification Search** ................. 715/864, 715/702

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,790,028 A | | 12/1988 | Ramage |
| 5,053,758 A | * | 10/1991 | Cornett et al. ............... 345/174 |
| 5,283,558 A | | 2/1994 | Chan |
| 5,406,307 A | * | 4/1995 | Hirayama et al. ............ 715/800 |
| 5,603,053 A | * | 2/1997 | Gough et al. ..................... 710/5 |
| 5,900,875 A | * | 5/1999 | Haitani et al. ............... 715/840 |
| 5,956,030 A | * | 9/1999 | Conrad et al. ............... 715/769 |
| 6,052,279 A | * | 4/2000 | Friend et al. ................. 361/686 |
| 6,085,204 A | * | 7/2000 | Chijiwa et al. .............. 715/246 |
| 6,346,935 B1 | * | 2/2002 | Nakajima et al. ............ 345/173 |
| 6,542,191 B1 | * | 4/2003 | Yonezawa ............. 348/333.01 |
| 6,597,345 B2 | * | 7/2003 | Hirshberg ................... 345/168 |
| 6,639,584 B1 | | 10/2003 | Li |
| 6,727,917 B1 | * | 4/2004 | Chew et al. .................. 715/765 |

| | | | |
|---|---|---|---|
| 6,734,883 B1 | * | 5/2004 | Wynn et al. ................... 715/830 |
| 6,833,827 B2 | * | 12/2004 | Lui et al. ...................... 345/173 |
| 6,988,246 B2 | * | 1/2006 | Kopitzke et al. ............. 715/810 |
| 7,006,077 B1 | * | 2/2006 | Uusimaki ..................... 345/173 |
| 7,030,861 B1 | * | 4/2006 | Westerman et al. .......... 345/173 |

(Continued)

FOREIGN PATENT DOCUMENTS

EP        0 330 767 B1      10/1993

OTHER PUBLICATIONS

Carlson, Jeff. Visual Quickstart Guide Palm Organizers. Peachpit Press. 2000. Berkeley, CA. Pages xiii, 12, 25, 26, 28-30, 40, 47, 246 and 253.*

(Continued)

*Primary Examiner* — Ryan Pitaro
(74) *Attorney, Agent, or Firm* — Soquel Group LLC

(57) **ABSTRACT**

The present invention relates to a user interface for a mobile handheld computer unit, which computer unit comprises a touch sensitive area (**1**), which is divided into a menu area (**2**) and a display area (**3**). The computer unit is adapted to run several applications simultaneously and to present an active application on top of any other application on the display area (**3**). The menu area (**2**) is adapted to present a representation of a first (**21**), a second (**22**) and a third predefined (**23**) function. The first function (**21**) is a general application dependent function, the second function (**22**) is a keyboard function, and the third function (**23**) is a task and file manager. Any one of these three functions can be activated when the touch sensitive area (**1**) detects a movement of an object with its starting point within the representation of the function on the menu area (**2**) and with a direction from the menu area (**2**) to the display area (**3**).

**17 Claims, 4 Drawing Sheets**



**US 8,095,879 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 7,159,763 | B2 * | 1/2007 | Yap et al. | 235/375 |
| 7,225,408 | B2 * | 5/2007 | O'Rourke | 715/743 |
| 7,286,063 | B2 * | 10/2007 | Gauthey et al. | 341/34 |
| 7,880,724 | B2 * | 2/2011 | Nguyen et al. | 345/168 |
| 2001/0002694 | A1 | 6/2001 | Nakazawa et al. | |
| 2001/0022579 | A1 | 9/2001 | Hirabayashi | |
| 2001/0026268 | A1 | 10/2001 | Ito | |
| 2001/0028344 | A1 | 10/2001 | Iwamoto et al. | |
| 2001/0055006 | A1 | 12/2001 | Sano et al. | |
| 2002/0002326 | A1 * | 1/2002 | Causey et al. | 600/300 |
| 2002/0027549 | A1 * | 3/2002 | Hirshberg | 345/168 |
| 2002/0046353 | A1 * | 4/2002 | Kishimoto | 713/202 |
| 2002/0171691 | A1 * | 11/2002 | Currans et al. | 345/864 |
| 2004/0021643 | A1 * | 2/2004 | Hoshino et al. | 345/173 |
| 2004/0100510 | A1 * | 5/2004 | Milic-Frayling et al. | 345/864 |
| 2005/0035956 | A1 * | 2/2005 | Sinclair et al. | 345/184 |

## OTHER PUBLICATIONS

Strietelmeier, Julie. "Palm m100." The Gadgeteer. 2000. <http://www.the-gadgeteer.com/review/palm_m100_review> pp. 1-8.*

Venolia et al, T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet, Apr. 24, 1994, pp. 265-270.*

Venoila et al, T-Cube: A Fast, Self Disclosing Pen-Based Alphabet, 1994, pp. 265-270.*

Karlson et al, AppLens and LaunchTile:Two Designs for One-Handed Thumb Use on Small Devices, CHI 2005.*

Dulberg et al, An Imprecise Mouse Gesture for the FAst Activation of Controls, Interact 1999, pp. 1-8.*

Rogue, Palm Pilot: The Ultimate Guide, 2nd Edition,1998, O'Reilly and Associates, Inc. pp. 1-17.*

* cited by examiner



Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

Fig. 5.



Fig. 6.

Fig. 7.



Fig. 8.



Fig. 9.

Fig. 10.

Fig. 11.

Fig. 12.



*Fig. 13.*



*Fig. 14.*

US 8,095,879 B2

**1**

## USER INTERFACE FOR MOBILE HANDHELD COMPUTER UNIT

### TECHNICAL FIELD

The present invention relates to a user interface for a mobile handheld computer unit, which computer unit comprises a touch sensitive area, and which touch sensitive area is divided into a menu area and a display area.

The computer unit is adapted to run several applications simultaneously and to present any active application on top of any other application on the display area.

The present invention also relates to an enclosure for a handheld computer unit.

The present invention also relates to a computer readable medium. A computer program product with computer program code is stored within the computer readable medium, which code, when read by a computer, will make it possible for this computer to present a user interface according to the invention.

### DESCRIPTION OF BACKGROUND ART

Mobile handheld computers are known in various embodiments. One kind of handheld computer is the personal digital assistant (PDA), which is getting more and more powerful.

Another kind of handheld computer unit is the mobile phone, which also is getting more and more powerful. There are also examples of where the mobile phone and the PDA are merging into one unit.

A third kind of handheld computer is the laptop computer, which is getting smaller and smaller, even competing in size with the PDA's.

The need to manage more information has led the development towards new solutions regarding user interfaces and navigation. The PDA's and mobile phones are getting larger and larger in order to provide a user-friendly interface.

Since the users have gotten used to small handheld units, it is hard to move towards larger units. This has led to foldable keyboards, different kinds of joy sticks and different kinds of touch sensitive displays and pads intended to help in providing a user interface that is suitable for small handheld computer units.

### SUMMARY OF THE PRESENT INVENTION

#### Technical Problems

It is a problem to provide a user-friendly interface that is adapted to handle a large amount of information and different kinds of traditional computer-related applications on a small handheld computer unit.

It is a problem to provide a user interface that is simple to use, even for inexperienced users of computers or handheld devices.

It is a problem to provide a small handheld computer unit with an easily accessible text input function.

It is also a problem to provide a simple way to make the most commonly used functions for navigation and management available in the environment of a small handheld computer unit.

#### Solution

Taking these problems into consideration, and with the staring point from a user interface for a mobile handheld computer unit, which computer unit comprises a touch sen-

**2**

sitive area, which touch sensitive area is divided into a menu area and a display area, which computer unit is adapted to run several applications simultaneously and to present an active application on top of any other application on the display area, the present invention teaches that the menu area is adapted to present a representation of a first, a second and a third predefined function, where the first function is a general application dependent function, the second function is a keyboard function, and the third function is a task and file manager. The present invention also teaches that any one of these three functions can be activated when the touch sensitive area detects a movement of an object with its starting point within the representation of the function on the menu area and with a direction from the menu area to the display area.

With the purpose of providing a simple way of managing any application or the operations system, the present invention teaches that if the first function is activated, the display area is adapted to display icons representing services or settings, depending on the current active application. One of the icons always represents a "help"-service, regardless of application. The icons are adapted to represent services or settings of the operations system of said computer unit, such as background picture, clock, users, help, etc. if no application is currently active on the computer unit.

Selections of preferred service or setting is done by tapping on corresponding icon.

With the purpose of providing the access to a text input function in any application in the computer unit, the present invention teaches that when the second function is activated, the display area is adapted to display a keyboard and a text field,

If a text passage in an active application is highlighted, then this text passage is displayed in the text field for editing through the keyboard and that the highlighted text passage is replaced by the edited text passage when the second function is deactivated.

If no text passage in an active application is highlighted, then the text field is available for inputting and editing of text through the keyboard.

In the case of the latter the first function can be activated, or the second function can be closed, in which a choice of saving or deleting the inputted text is given. The choice of saving the inputted text results in an activation of the first function. In this case the first function will present services or settings available for the inputted text, such as saving the inputted text for later use, using the inputted text as telephone number in a telephone application, or sending the inputted text as message in communications application.

In order to provide a task and file management in a user interface for a handheld mobile computer, the present invention teaches that, if the third function is activated, the display area is adapted to display a list with a library of available applications and files on the computer unit. A selection of an application will start the application, and a selection of a file will open the file in an application intended for the file.

A selection of an application or a file is done by moving the object so that the representation of desired application or file is highlighted, removing the object from the touch sensitive area, and then tapping on the touch sensitive area.

According to the present invention a navigation in the list is performed by moving the object in a direction towards the top of the list or towards the bottom of the list. This will cause the marking to move in the same direction. The speed of the movement of the marking is lower than the speed of the movement of the object, with the purpose of making the navigation easier.

3

The user interface of the present invention is specifically adapted to be used with a small computer unit where the size of the touch sensitive area is in the order of 2-3 inches, The user interface is also adapted to be operated by one hand, where the object can be a finger, such as the thumb, of a user of the computer unit.

## Advantages

Those advantages that can be primarily associated with a user interface or a computer readable medium according to the present invention reside in the ability to establish a user-friendly interface for small handheld computers, both regarding general application set-up functions, text input functions, and file and task management.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention will now be described in more detail with reference to the accompanying drawings, in which

FIG. 1 is a schematic and highly simplified view of a touch sensitive area on a mobile handheld computer unit;

FIG. 2 is a schematic side view illustrating the activation of a function;

FIG. 3 is a schematic illustration of a first function;

FIG. 4 is a schematic side view illustrating the selection of a service or setting represented by an icon;

FIG. 5 is a schematic illustration of a second function;

FIG. 6 is a schematic side view illustrating the selection of a third function;

FIG. 7 is a schematic illustration of an application or file;

FIG. 8 is a schematic illustration on how navigation is performed;

FIG. 9 is a schematic illustration of how the content of the display are is changed;

FIG. 10 is a schematic side view further illustrating how navigation is performed;

FIG. 11 is a schematic illustration of moving forwards in an application;

FIG. 12 is a schematic illustration of moving backwards in, or closing, an application;

FIG. 13 is a schematic illustration of an enclosure

FIG. 14 shows a computer readable medium in the form of a solid state memory.

## DESCRIPTION OF EMBODIMENTS AT PRESENT PREFERRED

FIG. 1 illustrates a user interface for a mobile handheld computer unit. The user interface according to the present invention is specifically adapted to computer units comprising a touch sensitive area 1, which is divided into a menu area 2 and a display area 3. It should be understood that there are several different kinds of known touch sensitive displays and that the present invention does not depend on what kind of touch sensitive display that is used in relation to the inventive user interface.

The computer unit is adapted to run several applications simultaneously and to present an active application on top of any other application on the display area 3. It should be understood that by simultaneously it is meant any technology that will make it appear to a user of the computer unit that applications are run simultaneously and that the present invention does not depend on how this is realised, whether it is through time-sharing of one processor, parallel use of several processors, or any other technique.

4

According to the present invention the menu area 2 is adapted to present a representation of a first 21, a second 22 and a third 23 predefined function.

The first function 21 is a general application dependent function, the second function 22 is a keyboard function, and the third function 23 is a task and file manager.

FIG. 2 shows that any one of these three functions 21, 22, 23 can be activated when the touch sensitive area 1 detects a movement of an object 4 with its starting point A within the representation of a function on the menu area 2 and with a direction B from the menu area 2 to the display area 3.

FIG. 3 shows that if the first function 21 is activated, then the display area 3 is adapted to display icons 211, 212, 213, 214, 215, 216 representing services or functions depending on the current active application. One of the icons, in the figure exemplified by icon 211, always represents a "help"-service, regardless of application. Any key that, because of lack of space on the display area, or because the key should be hidden from the active application, or because of any other reason is not shown on the display area of an active application, can be represented by one of the icons 212, 213, 214, 215, 216 that is shown when the first function 21 is activated.

If for instance the active application handles a picture, then the icons that are shown when the first function is activated can be services such as "save to disk", "send as SMS", or "delete" and they can be settings such as "resolution", "colour", or "brightness".

If no application is currently active on the computer unit, then the icons 211, 212, 213, 214, 215, 216 are adapted to represent services or settings of the operations system of the computer unit, such as background picture, clock, alarm 215, users 213, help 211, etc.

FIG. 4 shows that selection of a preferred service or setting is done by tapping C, D on corresponding icon 213.

FIG. 5 shows that if the second function 22 is activated, then the display area 3 is adapted to display a keyboard 221 and a text field 222.

Two different scenarios can be at hand when this function key is activated. A first scenario can be that a text passage in the active application is highlighted as the second function is activated. If this is the case then the highlighted text passage is displayed in the text field 222 for editing through the keyboard 221.

The highlighted text passage is replaced by the edited text passage when the second function 21 is deactivated.

A second scenario can be that no text passage in the active application is highlighted. If this is the case then the text field 222 is available for inputting and editing of text through the keyboard 221.

In the case of the latter scenario, the first function 21 can be activated, or the second function 22 can be closed. If the second function 22 is closed then a choice of saving or deleting the inputted text is given, where the choice of saving the inputted text results in an activation of the first function 21.

As the first function 21 is activated with the second function 22 as currently active application the first function 21 will present services or settings available for the inputted text, such as saving the inputted text for later use, using the inputted text as telephone number in a telephone application, or sending the inputted text as message in communications application, such as e-mail, SMS, or fax.

FIG. 6 shows that if the third function 23 is activated, then the display area 3 is adapted to display a list 231 with a library of available applications and files on the computer unit.

A selection of an application will start the application, and a selection of a file will open the file in an application intended

for the file. The name of a selected file can be edited by activation of the second function 22 as the file is highlighted.

FIG. 7 shows that a selection of an application or a file is done by moving E the object 4 so that the representation of desired application or file is highlighted, removing F the object 4 from the touch sensitive area 1, and then tapping G, H on the touch sensitive area 1.

An application or file is highlighted by placing some kind of marking 232 on the representation of the application or file. This marking can be done in different ways, for example by putting a frame around the representation of the application or file, as shown in the figure, or by inverting the representation of the application or file.

It should be understood that all lists in the computer unit, such as a list of contact information in an address book, a list of e-mail messages in a mailbox, or a telephone log, can be managed in the above described manner.

The list 231 can be adapted to present only files or only applications. In this case, the top area of the list 231 can present a field 233 through which the content of the list 231 can be altered. If the list only presents files, then the field 233 can display a representation of a task manager and a selection of the field 233 will cause the list 231 to after to present only applications, and if the list 231 only presents applications, then the field 233 displays a representation of a file manager and a selection of the field 233 will cause the list 231 to after and present only files.

FIG. 8 shows that navigation in the list is performed by moving the object 4 in a direction I towards the top 231a of the list 231 or towards J the bottom 231b of the list 231. This movement I, J of the object 4 will cause the marking 232 to move K, L in the same direction. The speed of the movement K, L of the marking 232 is lower than the speed of the movement I, J of the object 4.

FIG. 9 shows that if the number of applications and/or files in the list 231 exceeds the number of applications and/or files that can be presented on the display area 3, and if the object 4 is moved to the top or bottom position of the display area, then lifted, replaced on the display area, and then again moved to the top or bottom of the display area, then the content of the display area will be replaced one whole page, meaning that if the object 4 is positioned N at the bottom 3b of the display area 3, then lifted, replaced on the display area 3, and then again moved M to the bottom 3b of the display area 3, then the content 31 of the display area 3 will be replaced P by the following applications and/or files 32 in the list 231. In the same way, but not shown in the figure, if the object is positioned at the top of the display area, then lifted, replaced on the display area 3, and then again moved to the top of the display area, the content of the display area will be replaced by the preceding applications and/or files in the list.

FIG. 10 shows that if the object 4 is removed Q from a first position 33 on the display area 3 and then replaced R, S on a second position 34 on the display area 3, then the navigation can be continued T from the second position 34.

FIG. 11 shows that moving U the object 4 from the left of the display area 3 to the right of the display area 3 moves the active application, function, service or setting on one step forwards. FIG. 12 shows that, in a similar manner, the active application, function, service or setting is closed or backed one step by moving V the object 4 from the right of the display area 3 to the left of the display area 3.

As shown in FIG. 1, the menu area 2 is positioned at the bottom of the touch sensitive area 1. The representation of the first function 21 is positioned at the left side of the menu area 2, the representation of the second function 22 is positioned at

the middle of the menu area 2, and the representation of the third function 23 is positioned at the right side of the menu area 2.

As shown in FIG. 13, the present invention relates to a user interface for a hand held mobile unit that preferably can be manageable with one hand. Hence the present invention teaches that the user interface is adapted to a touch sensitive area 1 with a size that is in the order of 2-3 inches, meaning the diagonal distance W between two corners of the touch sensitive area 1.

The user interface is adapted to be operated by one hand, where the object 4 can be a finger, such as the thumb shown in the figures, of a user of the computer unit. It should be understood though that the present invention might also be used with another object, such as a pen or other pointing device.

According to one preferred embodiment of the present invention the computer unit is covered with an enclosure 5, which is provided with an opening 51 for the display area 3, and where the representations of the menu area 2 is printed on top of the enclosure 5. It should be understood that the opening 51 might be a transparent part of the enclosure 5 or that it might be an open aperture depending on among other things technical considerations pertaining to the touch sensitive area 1.

This makes it possible to allow the enclosure 5 to be removable and exchangeable.

FIG. 14 shows a computer readable medium, in the figure schematically shown as a solid-state memory 61. A computer program product is stored within the computer readable medium. This computer program product comprises computer readable code 62, which, when read by a computer 6, will make it possible for the computer 6 to present a user interface according to the present invention.

The present invention also teaches that the computer program product is adapted to function as a shell upon an operations system.

It will be understood that the invention is not restricted to the aforedescribed and illustrated exemplifying embodiments thereof, and that these embodiments can be modified within the scope of the inventive concept illustrated in the accompanying Claims.

The invention claimed is:

1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

a touch sensitive area in which a representation of a function is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location, wherein the representation of the function is not relocated or duplicated during the gliding.

2. The computer readable medium of claim 1, wherein the function, when activated, causes the user interface to display icons representing different services or settings for a currently active application.

3. The computer readable medium of claim 2, wherein the user interface is characterised in, that a selection of a preferred service or setting is done by tapping on a display icon corresponding to the preferred service or setting.

US 8,095,879 B2

7

**4**. The computer readable medium of claim **1**, wherein the function, when activated, causes the user interface to display a keyboard and a text field.

**5**. The computer readable medium of claim **4**, wherein said text field is used for inputting and editing of text through said keyboard.

**6**. The computer readable medium of claim **1**, wherein the function, when activated, causes the user interface to display a list with a library of available applications and files on the mobile handheld computer unit.

**7**. The computer readable medium of claim **6**, wherein the user interface is characterised in, that a selection of an application or file is done by gliding the object along said touch sensitive area so that a representation of a desired one of said application or file is highlighted, raising said object from said touch sensitive area, and then tapping on said touch sensitive area.

**8**. The computer readable medium of claim **7**, wherein the user interface is characterised in, that at any given time said list presents only files or only applications, and that an area of said list presents a field through which said list can be changed from presenting files to presenting applications, or from presenting applications to presenting files.

**9**. The computer readable medium of claim **7**, wherein the user interface is characterised in, that, one item in said list is highlighted by a moveable marking, and the user interface enables list navigation whereby gliding the object along the touch sensitive area in a direction towards the top of said list or towards the bottom of said list causes said marking to move in the same direction without scrolling the list.

**10**. The computer readable medium of claim **9**, wherein the user interface is characterised in, that, if the number of applications or files in said list exceeds the number of applications or files that can be presented on said touch sensitive area as content, and if the object is (i) glided along said touch sensi-

8

tive area to the top or bottom of said touch sensitive area, then (ii) raised above said touch sensitive area, then (iii) replaced on said touch sensitive area, and then (iv) again glided along said touch sensitive area to the top or bottom of said touch sensitive area, said list navigation pages the content of said list up or down by one whole page.

**11**. The computer readable medium of claim **10**, wherein the user interface is characterised in, that if the object is raised from any first position on said touch sensitive area and then replaced on any second position on said touch sensitive area, said list navigation can be continued from said second position.

**12**. The computer readable medium of claim **1**, wherein the user interface is characterised in, that an active application, function, service or setting is advanced one step by gliding the object along the touch sensitive area from left to right, and that the active application, function, service or setting is closed or backed one step by gliding the object along the touch sensitive area from right to left.

**13**. The computer readable medium of claim **1**, wherein the user interface is characterised in, that said representation of said function is located at the bottom of said touch sensitive area.

**14**. The computer readable medium of claim **1**, wherein the touch sensitive area is 2-3 inches in diagonal dimension.

**15**. The computer readable medium of claim **1**, characterised in, that said computer program code is adapted to function as a shell upon an operating system.

**16**. The computer readable medium of claim **1**, wherein the representation is finger-sized.

**17**. The computer readable medium of claim **1**, wherein the location where the representation is provided does not provide touch functionality for a different function.

\* \* \* \* \*

# Exhibit B

US008812993B2

(12) **United States Patent**
Goertz

(10) **Patent No.:**  **US 8,812,993 B2**
(45) **Date of Patent:**  **Aug. 19, 2014**

(54) **USER INTERFACE**

(75) Inventor:  **Magnus Goertz**, Lidingo (SE)

(73) Assignee:  **Neonode Inc.**, Santa Clara, CA (US)

( * ) Notice:  Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **13/310,755**

(22) Filed:  **Dec. 4, 2011**

(65) **Prior Publication Data**

US 2012/0094723 A1    Apr. 19, 2012

**Related U.S. Application Data**

(63) Continuation of application No. 10/315,250, filed on Dec. 10, 2002, now Pat. No. 8,095,879.

(51) **Int. Cl.**
| | | |
|---|---|---|
| G06F 3/00 | (2006.01) |
| G06F 3/0481 | (2013.01) |
| G06F 3/0488 | (2013.01) |

(52) **U.S. Cl.**
CPC ............ **G06F 3/0488** (2013.01); **G06F 3/0481** (2013.01)
USPC ........................... **715/863**; 715/764; 715/864

(58) **Field of Classification Search**
USPC ......................................... 715/863, 864, 764
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,243,879 A | 1/1981 | Carroll et al. |
| 4,301,447 A | 11/1981 | Funk et al. |
| 4,790,028 A | 12/1988 | Ramage |
| 4,847,606 A | 7/1989 | Beiswenger |

| | | | |
|---|---|---|---|
| 5,036,187 A | 7/1991 | Yoshida et al. |
| 5,053,758 A | 10/1991 | Cornett et al. |
| 5,194,863 A | 3/1993 | Barker et al. |
| 5,283,558 A | 2/1994 | Chan |
| 5,305,435 A * | 4/1994 | Bronson ........................ 715/777 |
| 5,406,307 A * | 4/1995 | Hirayama et al. ............ 715/800 |
| 5,463,725 A | 10/1995 | Henckel et al. |
| 5,561,758 A | 10/1996 | Hocker et al. |
| 5,577,733 A | 11/1996 | Downing |
| 5,594,471 A * | 1/1997 | Deeran et al. ................. 345/173 |
| 5,603,053 A * | 2/1997 | Gough et al. .................... 710/5 |
| 5,612,719 A | 3/1997 | Beernik et al. |
| 5,618,232 A | 4/1997 | Martin |
| 5,644,628 A * | 7/1997 | Schwarzer et al. ........ 379/93.19 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 330 767 B1 | 9/1989 |
| EP | 0513694 A2 | 11/1992 |

(Continued)

OTHER PUBLICATIONS

Carlson, Jeff, Visual Quickstart Guide Palm Organizers. Peachpit Press. 2000. Berkeley, CA. pp. xiii, 12, 25, 26, 28-30, 40, 47, 246 and 253.

(Continued)

*Primary Examiner* — Ryan Pitaro
(74)  *Attorney, Agent, or Firm* — Soquel Group LLC

(57)  **ABSTRACT**

A non-transitory computer readable medium storing computer program code which, when executed by a mobile handheld device that has a touch sensitive display, instructs the device (i) to display a notification of an incoming phone call, and (ii) to accept the call in response to a mufti-step operation comprising an object touching the touch sensitive display, and the object gliding along the touch sensitive display in a specific direction.

**8 Claims, 4 Drawing Sheets**



US 8,812,993 B2

Page 2

(56)  **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,745,116 | A | 4/1998 | Pisutha-Arnond |
| 5,748,185 | A | 5/1998 | Stephan et al. |
| 5,785,439 | A | 7/1998 | Bowen |
| 5,821,930 | A | 10/1998 | Hansen |
| 5,821,933 | A | 10/1998 | Keller et al. |
| 5,825,352 | A | 10/1998 | Bisset et al. |
| 5,889,236 | A | 3/1999 | Gillespie et al. |
| 5,898,434 | A | 4/1999 | Small et al. |
| 5,900,875 | A | 5/1999 | Haitani et al. |
| 5,907,327 | A * | 5/1999 | Ogura et al. .................. 715/764 |
| 5,914,709 | A | 6/1999 | Graham et al. |
| 5,943,039 | A | 8/1999 | Anderson et al. |
| 5,943,044 | A | 8/1999 | Martinelli et al. |
| 5,956,030 | A | 9/1999 | Conrad et al. |
| 5,988,645 | A | 11/1999 | Downing |
| 6,037,937 | A | 3/2000 | Beaton et al. |
| 6,052,279 | A | 4/2000 | Friend et al. |
| 6,085,204 | A | 7/2000 | Chijiwa et al. |
| 6,088,032 | A * | 7/2000 | Mackinlay .................. 715/848 |
| 6,292,179 | B1 | 9/2001 | Lee |
| 6,304,261 | B1 | 10/2001 | Shields et al. |
| 6,310,610 | B1 | 10/2001 | Beaton et al. |
| 6,340,979 | B1 | 1/2002 | Beaton et al. |
| 6,346,935 | B1 | 2/2002 | Nakajima et al. |
| 6,356,287 | B1 | 3/2002 | Ruberry et al. |
| 6,529,920 | B1 | 3/2003 | Arons et al. |
| 6,542,191 | B1 | 4/2003 | Yonezawa |
| 6,549,217 | B1 * | 4/2003 | De Greef et al. ............ 715/745 |
| 6,573,883 | B1 * | 6/2003 | Bartlett ........................ 345/156 |
| 6,597,345 | B2 | 7/2003 | Hirshberg |
| 6,618,063 | B1 | 9/2003 | Kurtenbach |
| 6,639,584 | B1 | 10/2003 | Li |
| 6,646,633 | B1 | 11/2003 | Nicolas |
| 6,664,983 | B2 | 12/2003 | Ludolph |
| 6,690,365 | B2 | 2/2004 | Hinckley et al. |
| 6,690,387 | B2 | 2/2004 | Zimmerman et al. |
| 6,707,449 | B2 | 3/2004 | Hinckley et al. |
| 6,727,917 | B1 | 4/2004 | Chew et al. |
| 6,734,883 | B1 | 5/2004 | Wynn et al. |
| 6,757,001 | B2 * | 6/2004 | Allport ........................ 715/840 |
| 6,757,002 | B1 * | 6/2004 | Oross et al. ................. 715/864 |
| 6,765,559 | B2 | 7/2004 | Hayakawa |
| 6,788,292 | B1 | 9/2004 | Nako et al. |
| 6,812,940 | B2 * | 11/2004 | Arnold ........................ 715/817 |
| 6,833,827 | B2 | 12/2004 | Lui et al. |
| 6,874,683 | B2 | 4/2005 | Keronen et al. |
| 6,925,611 | B2 | 8/2005 | SanGiovanni |
| 6,988,246 | B2 | 1/2006 | Kopitzke et al. |
| 7,006,077 | B1 | 2/2006 | Uusimaki |
| 7,007,239 | B1 * | 2/2006 | Hawkins et al. ............ 715/780 |
| 7,030,861 | B1 | 4/2006 | Westerman et al. |
| 7,046,232 | B2 * | 5/2006 | Inagaki et al. .............. 345/158 |
| 7,155,683 | B1 * | 12/2006 | Williams .................... 715/816 |
| 7,159,120 | B2 * | 1/2007 | Muratov et al. ............ 713/182 |
| 7,159,763 | B2 | 1/2007 | Yap et al. |
| 7,199,786 | B2 | 4/2007 | Suraqui |
| 7,225,408 | B2 | 5/2007 | O'Rourke |
| 7,231,231 | B2 * | 6/2007 | Kokko et al. ............... 455/566 |
| 7,283,845 | B2 * | 10/2007 | De Bast ...................... 455/566 |
| 7,286,063 | B2 | 10/2007 | Gauthey et al. |
| 7,304,638 | B2 | 12/2007 | Murphy |
| 7,343,565 | B2 * | 3/2008 | Ying et al. .................. 715/780 |
| 7,441,196 | B2 | 10/2008 | Gottfurcht et al. |
| 7,450,114 | B2 | 11/2008 | Anwar |
| 7,665,043 | B2 * | 2/2010 | Kho ............................ 715/864 |
| 7,818,691 | B2 * | 10/2010 | Irvine ......................... 715/856 |
| 7,880,724 | B2 | 2/2011 | Nguyen et al. |
| 8,120,625 | B2 | 2/2012 | Hinckley |
| 8,127,141 | B2 | 2/2012 | Hypponen |
| 2001/0000668 | A1 * | 5/2001 | Bodnar ....................... 345/339 |
| 2001/0002694 | A1 | 6/2001 | Nakazawa et al. |
| 2001/0017934 | A1 * | 8/2001 | Paloniemi et al. ........... 382/107 |
| 2001/0022579 | A1 | 9/2001 | Hirabayashi |
| 2001/0026268 | A1 | 10/2001 | Ito |
| 2001/0028344 | A1 | 10/2001 | Iwamoto et al. |

| | | | |
|---|---|---|---|
| 2001/0028365 | A1 * | 10/2001 | Ludolph ...................... 345/764 |
| 2001/0030641 | A1 | 10/2001 | Suzuki |
| 2001/0043189 | A1 * | 11/2001 | Brisebois et al. ............ 345/156 |
| 2001/0043198 | A1 | 11/2001 | Ludtke |
| 2001/0055006 | A1 | 12/2001 | Sano et al. |
| 2002/0002326 | A1 | 1/2002 | Causey, III et al. |
| 2002/0015064 | A1 * | 2/2002 | Robotham et al. ........... 345/863 |
| 2002/0027549 | A1 | 3/2002 | Hirshberg |
| 2002/0029341 | A1 * | 3/2002 | Juels et al. .................. 713/184 |
| 2002/0046353 | A1 | 4/2002 | Kishimoto |
| 2002/0054153 | A1 * | 5/2002 | Arnold ........................ 345/810 |
| 2002/0060699 | A1 * | 5/2002 | D'Agostini .................. 345/783 |
| 2002/0063696 | A1 | 5/2002 | Kubo et al. |
| 2002/0075244 | A1 | 6/2002 | Tani et al. |
| 2002/0109677 | A1 | 8/2002 | Taylor |
| 2002/0135619 | A1 * | 9/2002 | Allport ........................ 345/810 |
| 2002/0171691 | A1 | 11/2002 | Currans et al. |
| 2002/0173300 | A1 * | 11/2002 | Shtivelman et al. ......... 455/418 |
| 2002/0191029 | A1 * | 12/2002 | Gillespie et al. ............ 345/810 |
| 2003/0013483 | A1 * | 1/2003 | Ausems et al. .............. 455/556 |
| 2003/0016253 | A1 * | 1/2003 | Aoki et al. .................. 345/863 |
| 2003/0043207 | A1 | 3/2003 | Duarte |
| 2003/0076306 | A1 | 4/2003 | Zadesky et al. |
| 2003/0095102 | A1 * | 5/2003 | Kraft et al. .................. 345/168 |
| 2003/0122787 | A1 | 7/2003 | Zimmerman et al. |
| 2003/0206162 | A1 * | 11/2003 | Roberts ....................... 345/173 |
| 2004/0001101 | A1 * | 1/2004 | Trajkovic et al. ............ 345/781 |
| 2004/0021643 | A1 | 2/2004 | Hoshino et al. |
| 2004/0021681 | A1 * | 2/2004 | Liao ............................ 345/702 |
| 2004/0100510 | A1 | 5/2004 | Milic-Frayling et al. |
| 2004/0119763 | A1 * | 6/2004 | Mizobuchi et al. .......... 345/863 |
| 2004/0125143 | A1 | 7/2004 | Deaton et al. |
| 2004/0141010 | A1 | 7/2004 | Fitzmaurice et al. |
| 2005/0035956 | A1 | 2/2005 | Sinclair et al. |
| 2005/0253818 | A1 | 11/2005 | Nettamo |
| 2007/0263822 | A1 * | 11/2007 | Chang et al. ............ 379/202.01 |
| 2009/0285383 | A1 * | 11/2009 | Tsuei ........................... 379/242 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0618528 A1 | 10/1994 |
| EP | 0703525 A1 | 3/1996 |
| WO | 8600446 A1 | 1/1986 |
| WO | 8600447 A1 | 1/1986 |

OTHER PUBLICATIONS

Streitelmeier, Julie, "Palm m100." The Gadgeteer. 2000. <http://www.the-gadgeteer.com/review/palm_m100_review> pp. 1-8.

Venolia et al., "T-Cube: A Fast, Self-Disclosing Pen-Based Alphabet." Apr. 24, 1994. pp. 265-270.

Dulberg, et al., An Imprecise Mouse Gesture for the Fast Activation of Controls. Interact 1999. pp. 1-8.

Pogue, David, Palm Pilot: The Ultimate Guide, 2nd Edition, 1998. O'Reilly and Associates, Inc. pp. 1-17.

C. Plaisant and D. Wallace, "Touchscreen toggle design", CHI '92 Proceedings of the SIGCHI Conference on Human Factors in Computing Systems, May 3-7, 1992, pp. 667-668, ACM New York, NY, USA.

Harrison, B. L., Fishkin, K. P., Gujar. A., Mochon, C. and Want, R., Squeeze Me, Hold Me, Tilt Me! An Exploration of Manipulative User Interfaces, Proceeding of the CHI '98 Conference on Human Factors in Computing Systems, ACM, Los Angeles, CA, Apr. 18-23, 1998, pp. 17-24.

Kurtenbach, G. P., Sellen, A. J. and Buxton, W. A. S., An Empirical Evaluation of Some Articulatory and Cognitive Aspects of Marking Menus, Human-Computer Interaction, vol. 8, Issue 1, L. Erlbaum Associates Inc., Hillsdale, NJ, Mar. 1993, pp. 1-23.

MacKenzie, I. S. and Soukoreff, R W., Text Entry for Mobile Computing: Models and Methods, Theory and Practice, Human-Computer Interaction, L. Erlbaum Associates Inc. Hillsdale, NJ, 2002, vol. 17, pp. 147-198.

Mynatt, E. D., Igarashi, T., Edwards, W. K. and LaMarca, A., Flatland: New Dimensions in Office Whiteboards, Proceeding of the CHI '99 Conference on Human Factors in Computing Systems, ACM, New York, NY, May 15-20, 1999, pp. 346-353.

**US 8,812,993 B2**

Page 3

(56)     **References Cited**

OTHER PUBLICATIONS

Bier, E. A., Fishkin, K., Pier, K. and Stone, M. C., A Taxonomy of See-Through Tools: The Video, Proceeding of the CHI '95 Mosaic of Creativity, ACM, New York, NY, May 7-11, 1995, pp. 411-412.

Bier, E. A., Stone, M. C., Fishkin, K., Buxton, W. and Baudel, T., A Taxonomy of See-Through Tools, Conference on Human Factors in Computing Systems, CHI '94, Boston, MA, ACM, New York, NY, Apr. 24-28, 1994, pp. 358-364.

Damm, C. H., Hansen, K. M. and Thomsen, M., Tool Support for Cooperative Object-Oriented Design: Gesture Based Modeling on an Electronic Whiteboard, Proceeding of the CHI '00 Conference on Human Factors in Computing Systems, ACM, New York, NY, Apr. 1-6, 2000, pp. 518-525.

Jermyn, I., Mayer, A., Monrose, F., Reiter, M. K. and Rubin, A. D., The Design and Analysis of Graphical Passwords, Proceedings of the 8th USENIX Security Symposium, Washington, D.C., USA, Aug. 23-26, 1999.

Kurtenbach, G. and Buxton, W., Gordon Kurtenbach and William Buxton, The Limits of Expert Performance Using Hierarchic Marking Menus, Proceedings from INTERCHI 93—Conference on Human Factors in Computing Systems, ACM, New York, NY, Apr. 24-29, 1993, pp. 482-487.

Pirhonen, A., Brewster, S. and Holguin, C., Gestural and Audio Metaphors as a Means of Control for Mobile Devices, Proceedings of the SIGCHI Conference on Human Factors in Computing Systems: Changing our World, Changing Ourselves, ACM New York, NY, pp. 291-298.

SwitchHack 1.62",Jan. 17, 2001, downloaded from http://web. archive.org/web/200101170650/http://www.deskfree.com/switch-hack.html.

swipe_readme.txt, May 8, 2001, downloaded in swipe.zip from http://web.archive.org/web/20010508013439/http://www.samsungshop.co.yu/palm/swipe.zip.

"Desk Accessories",Oct. 18, 2000, downloaded from http://web. archive.org/web/20001018025151/http://www.doublebang.com/re-sources/da.html.

"Launch 'em 1.53", Dec. 11, 1998, downloaded from http://www. 5star-shareware.com/PDA/Palm/Utilities/launchem.html.

Pogue, David, Palm Pilot: The Ultimate Guide, 2nd Edition, 1999, O'Reilly and Associates, Inc., pp. 19, 27-36, 38-47, 80, 113, 494, 507, 509, 519-520.

Brad A. Myers, "Mobile Devices for Control", Mobile HCI 2002, F. Paterno (Ed.), LNCS 2411, pp. 1-8, 2002. SpringerVerlag, Berlin, Heidelberg.

Brad A. Myers, Kin Pou Lie and Bo-Chieh Yang, "Two-Handed Input Using a PDA and a Mouse", CHI '2000, Apr. 1-6, 2000, CHI Letters, vol. 2, Issue 1, pp. 41-48, 2000, ACM, New York, NY, USA.

Brad A. Myers, "Using Handhelds and PCs Together", Communications of the ACM, Nov. 2001, vol. 44, No. 11, pp. 34-41, ACM, New York, NY, USA.

Gordon Kurtenbach and William Buxton, "User Learning and Performance with Marking Menus", CHI '94 Proceedings of the SIGCHI Conference on Human factors in Computing Systems, pp. 258-264, ACM, New York, NY, USA.

Gordon Paul Kurtenbach, "The Design and Evaluation of Marking Menus", 1993. Doctoral Thesis, Graduate Department of Computer Science, University of Toronto.

David A. Carr, "Specification of Interface Interaction Objects", CHI '94 Proceedings of the SIGCHI Conference on Human factors in Computing Systems, pp. 372-378, 1994, ACM, New York, NY, USA.

David A. Carr, Ninad Jog, Harsha Prem Kumar, Marko Teittinen and Christopher Ahlberg, "Using Interaction Object Graphs to Specify Graphical Widgets", Tech. Rep. ISR-TR-94-69, Sep. 1994, Institute for Systems Research, University of Maryland, College Park, MD.

Catherine Plaisant and Daniel Wallace, "Touchscreen Toggle Switches: Push or Slide? Design Issues and Usability Study", Tech. Rep. CAR-TR-521, Nov. 1990, Human-Computer Interaction Laboratory,Center for Automation Research, Dept. of Psychology, University of Maryland, College Park, MD.

Mark A. Tapia and Gordon Kurtenbach, "Some Design Refinements and Principles on the Appearance and Behavior of Marking Menus", UIST '95, pp. 189-195, ACM New York, NY, USA.

Michael McGuffin, Nicolas Burtnyk and Gordon Kurtenbach, "FaST Sliders: Integrating Marking Menus and the Adjustment of Continuous Values", Proc. Graphics Interface, May 2002, pp. 35-42.

Harrison, Beverly L., Fishkin, Kenneth P., Gujar, Anuj, Mochon, Carlos and Want, Roy, Squeeze Me, Hold Me, Tilt Me! An Exploration of Manipulative User Interfaces, Proceeding of the CHI '98 Conference on Human Factors in Computing Systems, Apr. 18-23, 1998, pp. 17-24, ACM, Los Angeles, CA.

Kurtenbach, Gordon P., Sellen, Abigail J. and Buxton, William A. S., An Empirical Evaluation of Some Articulatory and Cognitive Aspects of Marking Menus, Human-Computer Interaction, vol. 8, Issue 1, Mar. 1993, pp. 1-23, L. Erlbaum Associates Inc., Hillsdale, NJ.

MacKenzie, I. Scott and Soukoreff, William, Text Entry for Mobile Computing: Models and Methods, Theory and Practice, Human-Computer Interaction, 2002, vol. 17, pp. 147-198, L. Erlbaum Associates Inc., Hillsdale, NJ.

Mynatt, Elizabeth D., Igarashi, Takeo, Edwards, W. Keith and LaMarca, Anthony, Flatland: New Dimensions in Office Whiteboards, Proceeding of the CHI '99 Conference on Human Factors in Computing Systems, May 15-20, 1999, pp. 346-353, ACM, Pittsburgh, PA.

Bier, Eric A., Fishkin, Ken, Pier, Ken and Stone, Maureen C., A Taxonomy of See-Through Tools: The Video, Proceeding of the CHI '95 Mosaic of Creativity, May 7-11, 1995, pp. 411-412, ACM, Denver, CO.

Bier, Eric A., Stone, Maureen C., Fishkin, Ken, Buxton, William and Baudel, Thomas, A Taxonomy of See-Through Tools, Conference on Human Factors in Computing Systems, CHI 1994, Boston, MA, Apr. 24-28, 1994, Proceedings, pp. 358-364. ACM, New York, NY.

Damm, Christian Heide, Hansen, Klaus Marius and Thomsen, Michael, Tool Support for Cooperative Object-Oriented Design: Gesture Based Modeling on an Electronic Whiteboard, Proceeding of the CHI '00 Conference on Human Factors in Computing Systems, Apr. 1-6, 2000, pp. 518-525, ACM, New York, NY.

Jermyn, Ian, Mayer Alain, Monrose, Fabian, Reiter, Michael K. and Rubin, Aviel D., The Design and Analysis of Graphical Passwords, Proceedings of the 8th USENIX Security Symposium, Washington, D.C., USA, Aug. 23-26, 1999.

Kenwood KVT-911DVD Instruction Manual, 2001, Japan.

Kurtenbach, Gordon and Buxton, William, The Limits of Expert Performance Using Hierarchic Marking Menus, Proceedings from INTERCHI 93—Conference on Human Factors in Computing Systems, pp. 482-487, ACM, New York, NY.

Pirhonen, Antti, Brewster, Stephen and Holguin, Christopher, Gestural and Audio Metaphors as a Means of Control for Mobile Devices, Proceedings of the SIGCHI conference on Human factors in computing systems: Changing Our World, Changing Ourselves, pp. 291-298, ACM New York, NY.

Launch 'em 3.02, Oct. 8, 2001, Synergy Solutions Inc., pp. 1-20.

Launch 'em, Synergy Solutions Inc., Oct. 8, 2001.

* cited by examiner



Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

Fig. 5.



*Fig. 6.*

*Fig. 7.*



*Fig. 8.*



Fig. 9.

Fig. 10.

Fig. 11.

Fig. 12.



*Fig. 13.*



*Fig. 14.*

US 8,812,993 B2

1

## USER INTERFACE

### PRIORITY REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 10/315,250, entitled USER INTERFACE FOR MOBILE HANDHELD COMPUTER UNIT, filed on Dec. 10, 2002 now U.S. Pat. No. 8,095,879 by inventor Magnus George Goertz.

### TECHNICAL FIELD

The present invention relates to a user interface for a mobile handheld computer unit, which computer unit comprises a touch sensitive area, and which touch sensitive area is divided into a menu area and a display area.

The computer unit is adapted to run several applications simultaneously and to present any active application on top of any other application on the display area.

The present invention also relates to an enclosure for a handheld computer unit

The present invention also relates to a computer readable medium. A computer program product with computer program code is stored within the computer readable medium, which code, when read by a computer, will make it possible for this computer to present a user interface according to the invention.

### DESCRIPTION OF BACKGROUND ART

Mobile handheld computers are known in various embodiments. One kind of handheld computer is the personal digital assistant (PDA), which is getting more and more powerful.

Another kind of handheld computer unit is the mobile phone, which also is getting more and more powerful. There are also examples of where the mobile phone and the PDA are merging into one unit.

A third kind of handheld computer is the laptop computer, which is getting smaller and smaller, even competing in size with the PDA's.

The need to manage more information has led the development towards new solutions regarding user interfaces and navigation. The PDA's and mobile phones are getting larger and larger in order to provide a user-friendly interface.

Since the users have gotten used to small handheld units, it is hard to move towards larger units. This has led to foldable keyboards, different kinds of joy sticks and different kinds of touch sensitive displays and pads intended to help in providing a user interface that is suitable for small handheld computer units.

### SUMMARY OF THE PRESENT INVENTION

#### Technical Problems

It is a problem to provide a user-friendly interface that is adapted to handle a large amount of information and different kinds of traditional computer-related applications on a small handheld computer unit.

It is a problem to provide a user interface that is simple to use, even for inexperienced users of computers or handheld devices.

It is a problem to provide a small handheld computer unit with an easily accessible text input function.

2

It is also a problem to provide a simple way to make the most commonly used functions for navigation and management available in the environment of a small handheld computer unit.

#### Solution

Taking these problems into consideration, and with the staring point from a user interface for a mobile handheld computer unit, which computer unit comprises a touch sensitive area, which touch sensitive area is divided into a menu area and a display area, which computer unit is adapted to run several applications simultaneously and to present an active application on top of any other application on the display area, the present invention teaches that the menu area is adapted to present a representation of a first, a second and a third predefined function, where the first function is a general application dependent function, the second function is a keyboard function, and the third function is a task and file manager. The present invention also teaches that any one of these three functions can be activated when the touch sensitive area detects a movement of an object with its starting point within the representation of the function on the menu area and with a direction from the menu area to the display area.

With the purpose of providing a simple way of managing any application or the operations system, the present invention teaches that if the first function is activated, the display area is adapted to display icons representing services or settings, depending on the current active application. One of the icons always represents a "help"-service, regardless of application. The icons are adapted to represent services or settings of the operations system of said computer unit, such as background picture, clock, users, help, etc. if no application is currently active on the computer unit.

Selections of preferred service or setting is done by tapping on corresponding icon

With the purpose of providing the access to a text input function in any application in the computer unit, the present invention teaches that when the second function is activated, the display area is adapted to display a keyboard and a text field,

If a text passage in an active application is highlighted, then this text passage is displayed in the text field for editing through the keyboard and that the highlighted text passage is replaced by the edited text passage when the second function is deactivated.

If no text passage in an active application is highlighted, then the text field is available for inputting and editing of text through the keyboard.

In the case of the latter the first function can be activated, or the second function can be closed, in which a choice of saving or deleting the inputted text is given. The choice of saving the inputted text results in an activation of the first function. In this case the first function will present services or settings available for the inputted text, such as saving the inputted text for later use, using the inputted text as telephone number in a telephone application, or sending the inputted text as message in communications application.

In order to provide a task and file management in a user interface for a handheld mobile computer, the present invention teaches that, if the third function is activated, the display area is adapted to display a list with a library of available applications and files on the computer unit. A selection of an application will start the application, and a selection of a file will open the file in an application intended for the file.

A selection of an application or a file is done by moving the object so that the representation of desired application or file

US 8,812,993 B2

**3**

is highlighted, removing the object from the touch sensitive area, and then tapping on the touch sensitive area.

According to the present invention a navigation in the list is performed by moving the object in a direction towards the top of the list or towards the bottom of the list. This will cause the marking to move in the same direction. The speed of the movement of the marking is lower than the speed of the movement of the object, with the purpose of making the navigation easier.

The user interface of the present invention is specifically adapted to be used with a small computer unit where the size of the touch sensitive area is in the order of 2-3 inches. The user interface is also adapted to be operated by one hand, where the object can be a finger, such as the thumb, of a user of the computer unit.

Advantages

Those advantages that can be primarily associated with a user interface or a computer readable medium according to the present invention reside in the ability to establish a user-friendly interface for small handheld computers, both regarding general application set-up functions, text input functions, and file and task management.

BRIEF DESCRIPTION OF THE DRAWINGS

The present invention will now be described in more detail with reference to the accompanying drawings, in which

FIG. **1** is a schematic and highly simplified view of a touch sensitive area on a mobile handheld computer unit; FIG. **2** is a schematic side view illustrating the activation of a function;

FIG. **3** is a schematic illustration of a first function;

FIG. **4** is a schematic side view illustrating the selection of a service or setting represented by an icon;

FIG. **5** is a schematic illustration of a second function;

FIG. **6** is a schematic side view illustrating the selection of a third function;

FIG. **7** is a schematic illustration of an application or file;

FIG. **8** is a schematic illustration on how navigation is performed;

FIG. **9** is a schematic illustration of how the content of the display are is changed;

FIG. **10** is a schematic side view further illustrating how navigation is performed;

FIG. **11** is a schematic illustration of moving forwards in an application;

FIG. **12** is a schematic illustration of moving backwards in, or closing, an application;

FIG. **13** is a schematic illustration of an enclosure

FIG. **14** shows a computer readable medium in the form of a solid state memory.

DESCRIPTION OF EMBODIMENTS AT
PRESENT PREFERRED

FIG. **1** illustrates a user interface for a mobile handheld computer unit. The user interface according to the present invention is specifically adapted to computer units comprising a touch sensitive area **1**, which is divided into a menu area **2** and a display area **3**. It should be understood that there are several different kinds of known touch sensitive displays and that the present invention to does not depend on what kind of touch sensitive display that is used in relation to the inventive user interface.

The computer unit is adapted to run several applications simultaneously and to present an active application on top of

**4**

any other application on the display area **3**. It should be understood that by simultaneously it is meant any technology that will make it appear to a user of the computer unit that applications are run simultaneously and that the present invention does not depend on how this is realised, whether it is through time-sharing of one processor, parallel use of several processors, or any other technique.

According to the present invention the menu area **2** is adapted to present a representation of a first **21**, a second **22** and a third **23** predefined function.

The first function **21** is a general application dependent function, the second function **22** is a keyboard function, and the third function **23** is a task and file manager.

FIG. **2** shows that any one of these three functions **21**, **22**, **23** can be activated when the touch sensitive area **1** detects a movement of an object **4** with its starting point A within the representation of a function on the menu area **2** and with a direction B from the menu area **2** to the display area **3**.

FIG. **3** shows that if the first function **21** is activated, then the display area **3** is adapted to display icons **211**, **212**, **213**, **214**, **215**, **216** representing services or functions depending on the current active application. One of the icons, in the figure exemplified by icon **211**, always represents a "help"-service, regardless of application. Any key that, because of lack of space on the display area, or because the key should be hidden from the active application, or because of any other reason is not shown on the display area of an active application, can be represented by one of the icons **212**, **213**, **214**, **215**, **216** that is shown when the first function **21** is activated.

If for instance the active application handles a picture, then the icons that are shown when the first function is activated can be services such as "save to disk", "send as SMS", or "delete" and they can be settings such as "resolution", "colour", or "brightness".

If no application is currently active on the computer unit, then the icons **211**, **212**, **213**, **214**, **215**, **216** are adapted to represent services or settings of the operations system of the computer unit, such as background picture, clock, alarm **215**, users **213**, help **211**, etc.

FIG. **4** shows that selection of a preferred service or setting is done by tapping C, D on corresponding icon **213**.

FIG. **5** shows that if the second function **22** is activated, then the display area **3** is adapted to display a keyboard **221** and a text field **222**.

Two different scenarios can be at hand when this function key is activated. A first scenario can be that a text passage in the active application is highlighted as the second function is activated. If this is the case then the highlighted text passage is displayed in the text field **222** for editing through the keyboard **221**.

The highlighted text passage is replaced by the edited text passage when the second function **21** is deactivated.

A second scenario can be that no text passage in the active application is highlighted. If this is the case then the text field **222** is available for inputting and editing of text through the keyboard **221**.

In the case of the latter scenario, the first function **21** can be activated, or the second function **22** can be closed. If the second function **22** is closed then a choice of saving or deleting the inputted text is given, where the choice of saving the inputted text results in an activation of the first function **21**.

As the first function **21** is activated with the second function **22** as currently active application the first function **21** will present services or settings available for the inputted text, such as saving the inputted text for later use, using the inputted text as telephone number in a telephone application, or

**5**

sending the inputted text as message in communications application, such as e-mail, SMS, or fax.

FIG. **6** shows that if the third function **23** is activated, then the display area **3** is adapted to display a list **231** with a library of available applications and files on the computer unit.

A selection of an application will start the application, and a selection of a s file will open the file in an application intended for the file The name of a selected file can be edited by activation of the second function **22** as the file is highlighted.

FIG. **7** shows that a selection of an application or a file is done by moving E the object **4** so that the representation of desired application or file is highlighted, removing F the object **4** from the touch sensitive area **1**, and then tapping G, H on the touch sensitive area **1**.

An application or file is highlighted by placing some kind of marking **232** on the representation of the application or file. This marking can be done in different ways, for example by putting a frame around the representation of the application or file, as shown in the figure, or by inverting the representation of the application or file.

It should be understood that all lists in the computer unit, such as a list of contact information in an address book, a list of e-mail messages in a mailbox, or a telephone log, can be managed in the above described manner.

The list **231** can be adapted to present only files or only applications. In this case, the top area of the list **231** can present a field **233** through which the content of the list **231** can be altered. If the list only presents files, then the field **233** can display a representation of a task manager and a selection of the field **233** will cause the list **231** to after to present only applications, and if the list **231** only presents applications, then the field **233** displays a representation of a file manager and a selection of the field **233** will cause the list **231** to after and present only files.

FIG. **8** shows that navigation in the list is performed by moving the object **4** in a direction I towards the top **231a** of the list **231** or towards J the bottom **231b** of the list **231**. This movement I, J of the object **4** will cause the marking **232** to move K, L in the same direction. The speed of the movement K, L of the marking **232** is lower than the speed of the movement I, J of the object **4**.

FIG. **9** shows that if the number of applications and/or files in the list **231** exceeds the number of applications and/or files that can be presented on the display area **3**, and if the object **4** is moved to the top or bottom position of the display area, then lifted, replaced on the display area, and then again moved to the top or bottom of the display area, then the content of the display area will be replaced one whole page, meaning that if the object **4** is positioned N at the bottom **3b** of the display area **3**, then lifted, replaced on the display area **3**, and then again moved M to the bottom **3b** of the display area **3**, then the content **31** of the display area **3** will be replaced P by the following applications and/or files **32** in the list **231**. In the same way, but not shown in the figure, if the object is positioned at the top of the display area, then lifted, replaced on the display area, and then again moved to the top of the display area, the content of the display area will be replaced by the preceding applications and/or files in the list.

FIG. **10** shows that if the object **4** is removed Q from a first position **33** on the display area **3** and then replaced R, S on a second position **34** on the display area **3**, then the navigation can be continued T from the second position **34**.

FIG. **11** shows that moving U the object **4** from the left of the display area **3** to the right of the display area **3** moves the active application, function, service or setting on one step forwards. FIG. **12** shows that, in a similar manner, the active

**6**

application, function, service or setting is closed or backed one step by moving V the object **4** from the right of the display area **3** to the left of the display area **3**.

As shown in FIG. **1**, the menu area **2** is positioned at the bottom of the touch sensitive area **1**. The representation of the first function **21** is positioned at the left side of the menu area **2**, the representation of the second function **22** is positioned at the middle of the menu area **2**, and the representation of the third function **23** is positioned at the right side of the menu area **2**.

As shown in FIG. **13**, the present invention relates to a user interface for a hand held mobile unit that preferably can be manageable with one hand. Hence the present invention teaches that the user interface is adapted to a touch sensitive area **1** with a size that is in the order of 2-3 inches, meaning the diagonal distance W between two corners of the touch sensitive area **1**.

The user interface is adapted to be operated by one hand, where the object **4** can be a finger, such as the thumb shown in the figures, of a user of the computer unit. It should be understood though that the present invention might also be used with another object, such as a pen or other pointing device.

According to one preferred embodiment of the present invention the computer unit is covered with an enclosure **5**, which is provided with an opening **51** for the display area **3**, and where the representations of the menu area **2** is printed on top of the enclosure **5**. It should be understood that the opening **51** might be a transparent part of the enclosure **5** or that it might be an open aperture depending on among other things technical considerations pertaining to the touch sensitive area **1**.

This makes it possible to allow the enclosure **5** to be removable and exchangeable.

FIG. **14** shows a computer readable medium, in the figure schematically shown as a solid-state memory **61**. A computer program product is stored within the computer readable medium. This computer program product comprises computer readable code **62**, which, when read by a computer **6**, will make it possible for the computer **6** to present a user interface according to the present invention.

The present invention also teaches that the computer program product is adapted to function as a shell upon an operations system.

It will be understood that the invention is not restricted to the aforedescribed and illustrated exemplifying embodiments thereof, and that these embodiments can be modified within the scope of the inventive concept illustrated in the accompanying claims.

The invention claimed is:

**1**. A non-transitory computer readable medium storing instructions, which, when executed by a processor of an electronic device having a touch-sensitive display screen, cause the processor to enable a user interface of the device, the user interface comprising at least two states, namely, (a) a tap-present state, wherein a plurality of tap-activatable icons for a respective plurality of pre-designated system functions are present, each system function being activated in response to a tap on its respective icon, and (b) a tap-absent state, wherein tap-activatable icons are absent but an otherwise-activatable graphic is present in a strip along at least one edge of the display screen for transitioning the user interface from the tap-absent state to the tap-present state in response to a multi-step user gesture comprising (i) an object touching the display screen within the strip, and (ii) the object gliding on the display screen away from and out of the strip.

**2**. The computer readable medium of claim **1**, wherein any state transition elicited by a user gesture that begins at a

**7**

**8**

location at which the otherwise-activatable graphic is provided, transitions to the tap-present state.

**3**. The computer readable medium of claim **1**, wherein the tap-present state does not display the tap-activatable icons within a window frame.

**4**. The computer readable medium of claim **1**, wherein the plurality of pre-designated system functions comprises a help function.

**5**. The computer readable medium of claim **1**, wherein the plurality of pre-designated system functions comprises a clock function.

**6**. The computer readable medium of claim **1**, wherein the plurality of pre-designated system functions comprises an alarm function.

**7**. The computer readable medium of claim **1**, wherein the strip is less than a thumb's width wide within the display screen.

**8**. The computer readable medium of claim **1**, wherein the multi-step user gesture comprises (i) the object touching the otherwise-activatable graphic, and (ii) the object gliding on the display screen away from and out of the strip.

\* \* \* \* \*